Thank you. We'll now hear argument in 23-9598 Singh v. Garland. Mr. Spurgeon. Good morning, Your Honor. May it please the Court, Counsel. I'm Stephen Spurgeon. I'm here to represent Jasner Singh as petitioner. In this case, Your Honor, I'd like to address two points this morning. First of all, I would impress upon the Court that the immigration judge in this case abused his discretion under this Court's precedent in Jimenez-Guzman v. Holder. And secondly, I'd like to address the fact that the Board of Immigration Appeals failed to follow its own precedent in the matter of MAM case in this matter. Addressing, first of all, the Jimenez-Guzman case. Board precedent in immigration regulation permits an immigration judge to grant a continuance for good cause. On April 5, 2019, Mr. Singh, who just recently attained an attorney in March, lawyer, files a motion to continue on the basis that Mr. Singh was suffering from the effects of prolonged starvation and refeeding syndrome and that he did not have an opportunity to prepare him for the court hearing because the day before, April the 4th, the time was taken up by immigration officials that were interrogating Mr. Singh for two and a half hours. And when the time was up, Mr. Singh was too tired and exhausted from the symptoms that the doctors told the judge about in the motion to continue. Mr. Singh was likely to suffer from difficulties with memory and focus, and he was likely to suffer from dizziness and fainting spells and continued diarrhea and constant headaches and severe insomnia due to, as the court is aware, a 74-day hunger strike that he and a dozen other Indians had begun to protest the conditions at the facility they were in because they weren't allowed to practice their religion. They were given warm clothes and it was cold in that facility. The hygiene materials weren't being provided and a host of other issues. How long before the hearing had the hunger strike ended? Pardon me? How long before the hearing had the hunger strike ended? About the 15th of March, Your Honor, is when the record indicates that that ended, around the 15th of March. What's important about that date, Your Honor? And the hearing was on what date? April the 5th. What's important about that date, Your Honor, is that the hearing was previously scheduled for May the 1st. The way this really worked is Mr. Singh didn't have a lawyer. He had a judge say, you've got to file your asylum application by February something. He filed it on time pro se. In the meantime, in March, he was able to get a pro bono lawyer who took over the case, submitted a new application, filed a motion to continue a March hearing. The judge on his own, without even ruling on the motion for schedule purposes, said it for May the 1st. Then the government, after a bunch of chaos in El Paso, Texas and southern New Mexico and a lot of publicity about these hunger strikes and a federal judge who intervened on the forced feeding issues, decided the government filed a motion to expedite the hearing back to April the 1st, April the 5th, in order for the hearing. So at the time, and the pro bono lawyer said he didn't get notice until March the 27th. So when they show up on the day of the hearing, he files a motion to continue, attaches the doctor's notes who say Mr. Singh is suffering from prolonged starvation and the effects of refeeding syndrome. And on top of it all off, when he does end the hunger strike, the first meal that the government gives him to eat is a burger, king whopper, and french fries, which makes him severely ill. And then they put him in the general population and his condition begins to deteriorate. It's against those facts that the immigration judge denied the motion for continuance and blew off this court's standard under the Jimenez-Guzman case that a judge has to have, number one, a rational explanation for the decision. Well, for starters, there's a presumption of competency. There is, Judge. And then the next step in looking at MAM as well is that if there is an addition of competence problems, the IJ is to inquire. Yes. And the IJ fairly thoroughly inquired and made a determination, you're ready to go. You're able to consult with your counsel. You're able to state your case. And that's entitled to some deference. Not really. Let me tell you why. Because MAM doesn't give restrictions on what the judge should ask. It gives examples of what the judge should ask. And more importantly, when we're talking about an addition of competency, shouldn't it include at least the doctor's letters that put it before the immigration judge that this man is not capable of going forward on this day? That would be an addition of incompetency. More importantly, when you're talking about addition of competency, matter of management addresses that issue in respect of what the department's duty is in terms of providing information to the immigration judge on what they know about his competency. I mean, Judge, the fact of the matter is the day before, two ISJs interviewed for two and a half hours. Don't you think that there ought to be something in that interview about his focus, whether he was able to remember, whether he was able to respond to the questions? The immigration judge did not ask the immigration officials, the Department of Homeland Security lawyers, to provide any of that information, and they didn't volunteer any of that information. Well, Mr. Singh's attorney knew about that, right? He found out that day when he was going to prepare his client, the day before the hearing, that they were interviewing him for two and a half hours. He wasn't in the room. But he knew about that interview. He didn't raise anything at the hearing? He did not, but matter of MAM doesn't put the requirement on him. It puts the requirement on the department and the judge. Well, if the judge doesn't know about an event that you think is relevant, and counsel that knows about it, and Mr. Singh himself knows about it, and they don't mention that, how is that an abuse of discretion by the judge not to inquire about something he didn't know about? Fair question. Fair question. Fair question. But matter of MAM puts the duty on the department as well to provide that information. But let's get to the real point here. The basis, the judge's explanation, which is not based on, I believe, the court's position, is it has to be a rational explanation. The judge's rational explanation is, and I quote, it appears to me you're simply malingering in attempting to delay these proceedings. And the judge doubles down on his written decision and says the same thing. Now, how is it remotely, how is it remotely rational that Mr. Singh, who's been on a hunger strike for 74 days, protesting all of these conditions, suddenly wants to stay longer in the facility because he's malingering? And more importantly, why didn't the immigration judge address that? There wasn't a single question asked about, Mr. Singh, are you having difficulties with your memory and focus today? Your Honor, Judge Coe, she mentioned about the thorough examination. Well, that's where it wasn't thorough. He asked about could you sit, could you talk, could you walk, could you stand up? Those don't have anything to do with memory and focus. And the judges told him he's going to have a problem with memory and focus, and he didn't ask a question one. He didn't ask a question one about when's the last time you were dizzy, when's the last time you had a fainting spell, when's the last time you had diarrhea, when's the last time you had a constant headache, when's the last time you had severe insomnia. None of it. And he didn't tell us, other than I think you're malingering, what is explanation, why is this supposed to be rational, number two. Well, before we leave that, and I hear what you're saying, Duke, but looking at MAM, judge or the parties may observe, there's a word, certain behaviors by the respondents, such as inability to understand and respond to questions, the inability to stay on topic, or a high level of distraction. So, again, it may be that we would rule differently on that, but it's not the noble. The IJ gets some deference, and the IJ is the one who is in the room. And then MAM explains some details of what they can do. It's not restrictive. But MAM also says that a judge can grant a continuous to gather the information. And that's explicit in the opinion. And the judge didn't even look at that part. Number two, did he get the part from established policies? He sure did. Regulation 8 CFR 100310B specifically provides that an immigration judge has to make a decision on an asylum application within 180 days of the date it's filed. This was filed in February of 2019. 180 days is what, August or September? The judge had plenty of time under the regulations, without any pressure from anybody in Washington, to make a decision within the timeframe. So there wasn't any rush to judgment on this, and there wasn't any reason why the judge couldn't follow the established policy to provide up to 180 days to make the decision. Number three, the court also said that there has to be an impermissible basis. The impermissible basis here, and the judge tells us what the impermissible basis is, he said that in order for Mr. Singh had to prove a specific medical deficiency that would prevent him from going forward. MAM didn't say anything about that. I'm not even sure where the immigration judge came up with it. But that's the impermissible basis. And when you take all three, the standard is met under the Jimenez-Guzman case. Second issue, the board didn't apply matter of MAM to this judge. As I mentioned before, matter of MAM expressly states, proceedings may be, also may be continued to allow the parties to gather and submit evidence relevant to these matters. And by that you mean competency, not the underlying merits? To determine whether there's an issue of competency. Okay. But we're talking about competency. We are. Under 240 A, B, 240 B3.  Yeah, because he never reached that. He basically, he decided there's no issue of competency, therefore I'm denying your motion to continue, go forward. All right. And when you're determining the issue of incompetency, you've got to at least ask the right questions. Again, when did you have the diarrhea? He didn't ask any of those questions. And matter of MAM precisely says the judges are supposed to do that. All right. I want to address one final thing in my few minutes. And I do have an issue with MAM. And I expect we're going to hear about it in a minute. MAM discussed competency in a very narrow, narrow way. And they discussed it in terms of, do you have a rational and fashionable understanding of the proceedings? Okay. Have you been able to consult with your attorney? And have you been able to prepare for the hearing under Section 240 B4, which says you have a right to present testimony and cross-examine witnesses and these kinds of things? That is an extraordinarily narrow reading. Okay. It's not defined by Congress in terms of what competency is. And I think in light of recent occurrences at the Supreme Court, it's not entitled to any deference by this court. Okay. But what my point is is that competency or not competency involves a lot more than that. And even if you apply matter of MAM to this case, he wasn't able to consult with his lawyer to prepare for the case because the time was taken up by the two ICE agents that interrogated him for two and a half hours. And his lawyer told the judge, Your Honor, he was mentally exhausted, he didn't have any focus, he was physically ill, all because of a hunger strike, and all because the Department of Homeland Security put him in the general population as opposed to him being able to get well to appear. And there's no downside. Zero downside for this judge to have said, you know, we'll just put that May 1st date back on the calendar, get ready if you get sick, let us know. You still live to well within 180 days. Your Honors, I'm going to sit down and reserve a minute for rebuttal if I may. Thank you. Good morning, Your Honors. Jonathan Needle, Department of Justice. On behalf of the respondent, may it please the court, there is ample support in the record for the immigration judge's decision to deny Mr. Singh's request for a continuance and instead move forward with his merits hearing on April 5th, 2019. Now this hearing took place months after Mr. Singh's initial appearance before the immigration judge, and after he was able to retain counsel, and after he was able to meet with counsel and furnish him with a declaration stating the reasons why he feared returning to his home country. When was that meeting with his counsel? I'm sorry? Was that meeting with his counsel the day before the hearing? There were, the record suggests that there were a number of meetings between Mr. Singh and his counsel from the time that counsel was retained in early March. So it was nearly one month between the time he found an attorney and the time that the merits hearing was scheduled. And there's no dispute that Mr. Singh provided a declaration. He provided statements from family members and other individuals in India, which was presented to the immigration judge by his counsel weeks before the April 5th hearing. And also it's noteworthy that an amended I-589 was provided on the day of the hearing on April 5th. This application was actually executed by Mr. Singh outside the courtroom, but his signature is clearly on this, what's essentially a second amended asylum application that was submitted to the immigration judge on the day of the hearing. What was the purpose of the ICE interview, the ICE interrogation the day before the hearing? The only information about this interview in the record comes from the declaration of Mr. Singh's counsel that he submitted with the continuance motion. So he represents that investigators interviewed Mr. Singh for a period of approximately two and a half hours. He explicitly says it was in the presence of counsel. And presumably if an interview is less that long, Mr. Singh is engaging with  He's responding to their questions. And even though the interview was conducted in his counsel's presence, there are no representations in the declaration that Mr. Singh had any trouble understanding what was being asked or providing the information that the investigators were seeking. Also to the point of Mr. Singh being tired following this interview and that providing reason for the continuance, if you look at the continuance motion, that was not the reason why the petitioner's counsel was seeking to indefinitely delay the merits hearing. Again, it was an indefinite delay and he says in his declarations or in the treatment that Mr. Singh has been receiving. So it was very amorphous what he was asking for. He didn't specify another date on which to hold the hearing. It appeared that he wanted the hearing to veer into the conditions of his detention in order to potentially support a challenge to those conditions, which obviously is well outside the scope of the removal proceeding. And again, in the continuance motion, Mr. Singh's counsel stated that he was able to meet with his client every day since he was transferred to the general population, which would have been four days prior to the merits hearing. There is conclusive evidence that Mr. Singh was able to meet with his counsel during the period in which he was on a hunger strike in the weeks following when he ended the hunger strike. And so this notion that additional time was needed in order to do the bare minimum of consultation with counsel and prepare for the merits hearing is not supported by the record. And so the IJ properly applied the presumption of competence. The IJ said that he reviewed the medical documentation that was submitted with the continuance motion. He correctly noted that the documentation dealt more with potential long-term effects of engaging in the hunger strike and that it was not relevant to the issue of competency or it didn't provide a reason to doubt that Mr. Singh was competent to proceed the April 5th hearing. And so the IJ acted entirely consistent with the framework that the board provided in matter of MAM. And I believe Mr. Singh's counsel is raising for the first time a challenge to the board's interpretation of matter MAM, which is being raised for the merits hearing and the court has affirmed that framework in precedential decisions a number of times. So that issue is not before the court. It's only the narrow issue. And of course, competence is a fact-bound determination. It's entitled to significant deference under the substantial evidence standard of review. And there is ample support in the record for the IJ's determination based on the medical evidence as I discussed and also the IJ's colloquy with Mr. Singh. What medical evidence supports that? The doctors didn't, did they? I'm sorry? The doctors who had examined him and reported. Right. Well, the medical evidence did not provide information that would compel reversal of the competency determination. I thought you were saying it supported the IJ. You're saying that it doesn't require reversal. Correct. Just to clarify. And there is a letter from an individual, Dr. Schaffer, who was able to conduct an in-person examination of Mr. Singh on, I believe it's March 22nd. So while Mr. Singh was in the segregated health unit at the detention facility and, you know, he was able to conduct a physical examination, he does not mention any specific cognitive impairment that would prevent Mr. Singh from going forward with his hearing on April 5th, which had already been scheduled. And in fact, Mr. Singh's counsel had indicated, again, in his motion, in the continuance motion, that he was aware that the hearing had been scheduled as of March 22nd. But the doctor mentions emotional health, severe depression, anxiety. Those are the sorts of things that might hinder a person in being able to communicate with counsel in a certain position, I think. Correct. And the question is whether those conditions would interfere with his ability to participate in the proceeding, consult with counsel, and just understand what was going on and present evidence on his own behalf. And so there's a representation that he suffered from mental health concerns, that he presented symptoms of mental health issues. But he doesn't elaborate on that. He doesn't mention any sort of medication that Mr. Singh was taking at the time or any side effects that might interfere with his cognition. How did the IJ deal with those doctor reports? Well, the IJ stated on the record that he reviewed the medical evidence. And again, he said that it spoke mainly to potential long-term effects on Mr. Singh's health as a result of the prolonged period of fasting. So under the circumstances, the IJ did not have to go into any more detail. It's not necessary for the IJ to engage with every specific representation that's made by the doctors. And there was a lot that was said in Dr. Schaeffer's letter about the results of the physical examination. And the judge doesn't have to go through that with a fine-toothed  Again, this is subject to the substantial standard of review. And it's incumbent on Mr. Singh at this stage of the proceedings to point to evidence that would compel reversal of the IJ's finding that there was no indicia of incompetency. You say Mr. Singh has a burden at this stage of the proceedings. Did Mr. Singh or his attorney have any burden to present evidence at the hearing where competency was raised as an issue? Did they have any burden to provide additional information about recent problems with Mr. Singh? Correct. I asked a question. I wasn't saying. I'm asking if they had any burden. Yes. So MAM recognizes this presumption of competency. So if a non-citizen would like to challenge that presumption, then they do have to come forward with some evidence. There has to be some evidence from the individual's demeanor. And again, this is a fact-bound determination. And the IJ engaged in a colloquy with Mr. Singh. Mr. Singh affirmed that he was aware of the contents of his application, that it was true and correct. Again, an amended application was submitted by his counsel at the outset of the hearing, which substantiates Mr. Singh's awareness of what the application contained. But after this colloquy, Mr. Singh chose not to finalize the application. With respect to the presumption, you said in response to the presumption, the petitioner must come forward with evidence. Once the petitioner comes forward with enough evidence, does the burden shift to the government to establish incompetency, or is it still with the petitioner to establish incompetency? Well, just to correct what I was saying, it wouldn't necessarily be the petitioner affirmatively presenting evidence of incompetency. This could be apparent to the IJ. The IJ for himself could recognize. Who ultimately has the burden? Again, given that there is a presumption in place, there needs to be something that is evident from the record, and typically it would be something that's presented either by the petitioner's counsel or the IJ. Well, some presumptions refer to the bursting bubble concept for presumptions. Once the person who's challenging the presumption has put forward enough evidence, then the presumption disappears, and the burden of persuasion shifts to the other side. That can happen. I'm asking what happens here. Well, I think the MN framework does not speak to this sort of burden-shifting analysis. It places the discretion in the hands of the IJ to make an informed decision based on what is before the IJ and what transpires at the hearing, and the IJ has a continuing obligation to assess competency. This is not a one-time determination at the beginning of the hearing, and it's purely hypothetical in this case that if Mr. Singh chose to finalize his application, if the case moved forward, perhaps he would have presented some addition of incompetency that the judge would react to and would, you know, pursue, proceed under the MN framework. But that's not what happened here. Mr. Singh abandoned his application for reasons that are unclear, and the IJ at that point had no choice but to find that the application had been abandoned and to order his removal. Thank you. Okay. Thank you, Your Honor. Mr. Spurgeon, you have less than a minute.  Your Honor, I was incorrect about his pro bono warrior being present at that two-and-a-half-hour interview. I want to clear that up. I misunderstood. I misspoke with respect to that. The warrior was present. I don't know the warrior, and he wasn't a retained warrior. He was a pro bono warrior, but that doesn't matter.  Mr. Singh was given a Hobson's choice. Go forward with the most important matter, probably, you've ever had in your life to try to prevent your deportation to a country where they want to persecute you based upon your political and religious beliefs or not to sign the asylum application because you're not capable of having the case detected. The immigration judge is in the record. Even after he had deemed the application abandoned, took the time to drag up everything he could to show that he would have to deny it anyway. All right? The Board of Immigration Appeals didn't address that part. They said, we're not going to go there. We're just going to rely upon the other portion. Am I up? Your time's up. Thank you very much. Thank you. You okay for another? I'm good. Thank you. Case is submitted. Counsel are excused.